IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| **DANIEL ASKINS**, <br><br>          Plaintiffs, <br><br> v. <br><br> **JEFFREY B. HAGOPIAN**, <br> **NOBLE DRILLING (U.S.) LLC,** <br><br>          Defendants, | CASE NO.: 16-1370 <br><br> **ORIGINAL COMPLAINT** <br><br> **DEMAND FOR JURY TRIAL** |

**ORIGINAL COMPLAINT**

Plaintiff Daniel Askins ("Askins" or "Plaintiff"), by and through his attorneys MZF Law Firm, PLLC files this Complaint against Defendant Jeffrey Hagopian ("Hagopian") and Noble Drilling (U.S.) LLC, ("Noble"), and hereby alleges as follows:

**I.     NATURE OF ACTION**

1.      This is an action for preliminary and permanent injunctive relief and damages arising from Defendant Hagopian's defamatory statements about Plaintiff, Defendant Hagopian's tortious interference with Plaintiff's contract with Noble, and for Defendant Noble's wrongful discharge of Plaintiff in violation of public policy.

**II.     PARTIES**

2.      Plaintiff Daniel Askins is a resident of the State of Washington.

3.      Defendant Jeffery B. Hagopian is a resident of Naples, Florida.

4. Defendant Noble Drilling (U.S.) LLC, is a Delaware corporation with its principal place of business in Houston, Texas. Noble can be served with process through its registered agent, CT Corporation system, 1999 Bryan Street, Ste. 900, Dallas, Texas 75201.

### III. JURISDICTION AND VENUE

5. This Court has jurisdiction over the subject matter of this action under 28 U.S.C § 1332 because Askins and Defendants are residents of different states and the amount in controversy exceeds the jurisdictional limits of this Court.

6. This Court has specific personal jurisdiction over Defendant Hagopian based upon the following: Defendant Hagopian committed tortious acts and made defamatory and disparaging comments about Plaintiff in this judicial district and directed at this judicial district, including without limitation, sending e-mail communications to individuals residing in this judicial district, and to Defendant Noble, headquartered in Texas and this judicial district, that contained defamatory, disparaging and false statements about Askins which at least contributed, either directly or indirectly, to Askins being terminated by Noble; and filing two lawsuits in this judicial district where Defendant Hagopian makes false statements in bad faith about Askins and Askins' professional integrity in support of Defendant Hagopian's claims therein. Defendant Hagopian directed his contacts at Texas and in particular this judicial district. Defendant Hagopian knew that these contacts, which were specifically intended to injure Askins in Texas and this judicial district, would be felt here in Texas and this judicial district. Askins was injured as a result of Defendant Hagopian's tortious acts directed at Texas and this judicial district.

7. This Court has specific personal jurisdiction over Defendant Noble based upon the following: Defendant Noble, headquartered in Texas and this judicial district, wrongfully discharged Plaintiff in violation of public policy. Defendant Noble directed its contacts at Texas

and in particular this judicial district. Defendant Noble knew that these contacts, which were specifically intended to injure Askins in Texas and this judicial district, would be felt here in Texas and this judicial district. Askins was injured as a result of Defendant Noble's wrongful discharge as against public policy directed at Texas and this judicial district.

8. Venue is proper in this district under 28 U.S.C. § 1391(b) and (c) because Defendants are subject to specific personal jurisdiction in this judicial district, and/or because a substantial part of the events or omissions giving rise to the claims alleged herein occurred in this judicial district and because Defendant Hagopian has already filed a lawsuit in this judicial district concerning similar and related facts as alleged herein and therefore this forum would not be inconvenient.

## IV.     FACTUAL ALLEGATIONS

9. Mr. Askins restates and re-alleges each of the allegations contained in paragraphs 1-8 as if fully stated herein.

10. Mr. Askins is a United States Coast Guard Unlimited Tonnage Captain. Mr. Askins was employed by Defendant Noble Drilling (U.S.) LLC ("Noble") from March 2011 until June 2011, and again in November 2011 through April 2015.

11. In or around November 2011, Mr. Askins started working on a vessel known as the "Danny Adkins" or "Noble Danny Adkins" ("NDA"), as Chief Mate.

12. Mr. Askins entered into an at-will employment contract with Defendant Noble for his services as Chief Mate.

13. The NDA is considered one of Noble's best vessels in its fleet, and always ranked among the top performing vessels in the Noble fleet of ocean rigs.

14. Mr. Askins served under Defendant Hagopian from in or around May 2012 until in or around February 2013.

15. When a temporary replacement captain was needed, Mr. Askins asked Defendant Hagopian to be considered for the position. Defendant Hagopian spoke with the other rig managers and the drilling superintendent about Mr. Askins filling the Captain vacancy.

16. In or around February 2013, Mr. Askins was temporarily promoted to Captain of the NDA. In April 2013, the temporary promotion was made permanent and Mr. Askins entered into an at-will employment contract with Defendant Noble for his services as a Captain of the NDA.

17. Defendant Hagopian knew and/or should have known that Mr. Askins had an at-will employment contract with Noble.

18. Mr. Askins shared Captain duties with Defendant Hagopian according to a typical rotation of twenty one (21) days on duty, twenty one (21) days off duty. Mr. Askins and Defendant Hagopian did not work on the vessel at the same time.

19. Both Mr. Askins and Defendant Hagopian reported to Defendant Noble's Drilling Superintendent, John Hawkins ("Hawkins").

20. Mr. Askins and Defendant Hagopian had a good working relationship up until about April 2014.

21. Up to this point, Mr. Askins and Defendant Hagopian would freely cover for each other when schedules needed to be shifted and would constructively work through logistical and staffing issues.

22. In or around April 2014, Mr. Askins was completing a Well Control Supervisor course in Houston, Texas. Defendant Hagopian was covering Mr. Askins' shift while he was completing the course. Defendant Hagopian became increasingly angry with Mr. Askins because Defendant Hagopian stood to lose out on an opportunity to travel to Las Vegas, Nevada for a boxing match.

Although, on information and belief, Defendant Hagopian was able to make the boxing match, the relationship was never the same.

23. Over the next few months, Mr. Askins and Defendant Hagopian continued sharing Captain duties on the NDA without incident.

24. In the fall of 2014, Mr. Askins learned that Defendant Hagopian was showing favoritism towards a Third Mate, Rocco Mussumeci ("Third Mate"), assigned to work on the same crew as Defendant Hagopian on the NDA and was engaging in activity that put the NDA and its crew at risk.

25. In response to numerous comments from other personnel working on the NDA during this time, Mr. Askins decided to speak with Defendant Hagopian in or around December 2014 regarding the issues affecting the NDA.

26. Defendant Hagopian was extremely defensive at first but eventually agreed to switch the Third Mate from his crew to Mr. Askins crew. Defendant Hagopian further acknowledged that the appearance of favoritism on the NDA could be damaging.

27. Mr. Askins and Defendant Hagopian further agreed to swap current Chief Mates since senior marine management were typically on different crews. On information and belief, the NDA had atypical staffing since Defendant Hagopian had a personality conflict with a prior Chief Mate, Collin Gee ("Chief Mate").

28. In or around that same time, the NDA received a Temporary Third Mate, Steven Haughland ("Temporary Third Mate"). This Temporary Third Mate began finding numerous deficiencies in the inspections that he conducted as part of his job, including; without limitation, expired batteries in flashlights and life jackets, expired food packets in the lifeboats. These deficiencies were the responsibility of the third mate, and, in particular, the Third Mate.

29.     The Temporary Third Mate confirmed Mr. Askins' belief that changing the crews would be necessary.

30.     On or around January 2015, Defendant Hagopian unilaterally withdrew his agreement to change the crews and/or move the Third Mate to split crews without informing Mr. Askins.

31.     In response, Mr. Askins contacted Drilling Superintendent Hawkins to report Defendant Hagopian's favoritism towards certain members of the crew, including the Third Mate, as well as other personnel management and equipment deficiency issues affecting the NDA.

32.     Mr. Askins further expressed his concern to Hawkins that Defendant Hagopian would retaliate for the report.

33.     Defendant Noble ignored the dispute and Mr. Askins' report of deficiencies, and encouraged Mr. Askins to work with Defendant Hagopian. Defendant Noble did, however, change the Third Mate's schedule so that he worked under both Mr. Askins and Defendant Hagopian.

34.     From this point forward, Defendant Hagopian took active steps to get Mr. Askins terminated from his position as Captain of the NDA.

35.     In or around February 2015, Mr. Askins was injured while off duty, and as a result of the injury he missed a scheduled safety course.  Mr. Askins contacted the Safety and Training Supervisor ("STS") on the rig and Hawkins concerning his injury and absence from the course.

36.     Several days later, Defendant Hagopian contacted the STS and demanded that the STS require Mr. Askins to present a work release for missing the safety course.

37.     Concerned that Defendant Hagopian was trying to get Mr. Askins in trouble and/or terminated, Mr. Askins once again brought the issue of Defendant Hagopian's favoritism towards the Third Mate and Defendant Hagopian's actions that were putting the NDA at risk to

Defendant Noble's attention by including Hawkins on the e-mail exchanges between Defendant Hagopian, Mr. Askins and the STS.

38. Defendant Noble instructed Defendant Hagopian and Mr. Askins to back off the e-mail communications and keep the matter private.

39. In response, Defendant Hagopian informed Hawkins that he did not trust Mr. Askins any more.

40. Next, on information and belief, Defendant Hagopian began falsely telling co-workers on the NDA and other employees that Mr. Askins coerced a third mate into making a false entry in the logbook about improperly launching the lifeboats to meet a USCG quarterly launching requirement.

41. Defendant Hagopian also made these false accusations about Mr. Askins to Vaclav Jedlicka, the Noble Designated Person Ashore, with the specific intent of getting Mr. Askins terminated.

42. After investigating the accusations, Mr. Askins was not reprimanded or terminated.

43. Unsatisfied, Defendant Hagopian requested a meeting with Defendant Noble's corporate office in a further effort to interfere with Mr. Askins' job at Noble. Defendant Hagopian repeated his false accusations to Defendant Noble's corporate office that Mr. Askins forged the NDA's logbooks and tried to or did coerce a subordinate to lie to the United States Coast Guard during the annual inspection.

44. Mr. Askins was contacted by Defendant Noble's corporate office in or around March 2015 to investigate Defendant's claims. Mr. Askins was not reprimanded, issued a formal or informal review or warning, or disciplined in any way based upon the false statements and accusations made by Defendant Hagopian. Mr. Askins did inform the investigators about

Defendant Hagopian's attempts to terminate Mr. Askins as well as Defendant Hagopian's misconduct regarding the NDA.

45. On or around March 26, 2015, Defendant Hagopian met with several managers at Defendant Noble's corporate office. On information and belief, Defendant Hagopian again falsely stated to the members of the meeting that Mr. Askins forged NDA logbook entries and ordered a subordinate to lie to the Coast Guard during an inspection routine.

46. On further information and belief, Defendant Hagopian made these statements with the specific intent to injure Mr. Askins' business and personal reputation and to injure Mr. Askins' ability to make a living and/or to interfere with Mr. Askins' employment contract with Noble.

47. On or around March 31, 2015, Defendant Hagopian was terminated from Noble.

48. On or around April 2, 2015, Defendant Hagopian transmitted an electronic mail from his yahoo email to Defendant Noble senior management and to the NDA e-mail service list falsely stating that Mr. Askins ordered Chief Mate Michael Tyler Gavis to lie to the Coast Guard; thereby impugning Mr. Askins' personal and professional reputation and interfering with his ability to remain employed through his at-will employment contract with Noble.

49. On information and belief, Defendant Noble did not correct the accusations made against Mr. Askins in Defendant Hagopian's e-mail.

50. Mr. Askins was terminated on April 6, 2015. Defendant Noble did not offer an explanation for terminating Mr. Askins other than "Dan, you were told to stay out of the emails with Jeff. Obviously that didn't happen, so Noble will no longer be requiring your services."

51. When Mr. Askins asked for a meeting or chance to explain, he was simply told: "We wanted to save you the trip down to Houston."

52. Mr. Askins sought unemployment benefits from Defendant Noble as a result of his termination. Defendant Noble opposed granting Mr. Askins unemployment benefits on the grounds that Mr. Askins was fired for "misconduct". The hearing officer at the TWC found Defendant Noble's opposition to be unfounded and awarded Mr. Askins unemployment benefits.

53. On information and belief, Mr. Askins was terminated as a direct result of voicing his concerns regarding Defendant Hagopian's misconduct aboard the NDA and Defendant Hagopian's actions aboard the NDA that put the safety and wellbeing of its crewmembers at risk, as well as, either directly or indirectly, a result of Defendant Hagopian's false accusations and continuous steps to interfere with Mr. Askins employment.

54. At the time that Mr. Askins was terminated, he was making roughly $290,000 per year as a Captain of the NDA for Defendant Noble.

55. Defendant Noble did not offer Mr. Askins a severance package or a letter of recommendation for his past services, or an offer of recommendation for new employment.

56. Since being terminated, Mr. Askins has made continuous efforts to gain permanent employment for his special training and skill without success. Specifically, Mr. Askins was denied employment with Military Sealift Command, a civilian arm of the United States Navy on the grounds that he had been terminated for misconduct by Defendant Noble.

57. On or around April 22, 2015, Defendant Hagopian filed an unrelated lawsuit in the United States District Court for the Southern District of Texas, styled as *Jeffery B. Hagopian v. Noble Drilling Services, Inc.*, Case No. 4:15-cv-01040 ("Noble Lawsuit").

58. Although Defendant Hagopian did not name Mr. Askins as a defendant in the Noble Lawsuit, Defendant Hagopian recklessly and with knowledge of their falsity made numerous

false allegations that Mr. Askins forged logbooks on the NDA and coerced a subordinate to lie to the United States Coast Guard during a routine inspection.

59. At the time that Defendant Hagopian filed the Noble Lawsuit, Defendant Hagopian knew that the statements regarding Mr. Askins were false.

60. Defendant Hagopian subsequently dismissed this action. The Complaint, with the defamatory and false statements, is still publicly available on the Court's electronic court filing system.

61. Shortly thereafter, Defendant Hagopian initiated an action before the Department of Labor.

62. In the administrative proceeding, Mr. Askins and Mr. Gavis were deposed. On information and belief, Mr. Askins' and Mr. Gavis' testimony contradicts that allegations and defamatory statements that Defendant Hagopian has repeatedly made about Mr. Askins.

63. Since the Secretary of Labor did not issue a final order on the case within two hundred ten (210) days, Defendant Hagopian re-filed his action in the United States District Court for the Southern District of Texas, Galveston Division on April 14, 2016. *See Hagopian v. Noble Drilling (US) LLC*, Case No. 3:16-cv-00099.

64. Once again, Defendant Hagopian alleged knowingly false and defamatory statements regarding Mr. Askins in his second Complaint against Noble. Indeed, Defendant Hagopian once again accused Mr. Askins of trying to get a chief mate to lie to the United States Coast Guard about a routine safety inspection.

### V. FIRST CAUSE OF ACTION AGAINST DEFENDANT HAGOPIAN: DEFEMATION

65. Plaintiff incorporates the allegations in the preceding paragraphs as if fully set forth herein.

66. As more fully set forth above, Defendant Hagopian made defamatory statements about Mr. Askins that were untrue, and disparaged, and therefore damaged, the reputation of Mr. Askins and caused other damages.

67. Defendant Hagopian published false and defamatory information regarding Mr. Askins' commission of criminal activity during an inspection by the United States Coast Guard on the NDA at least through electronic e-mail and through in person communications with Defendant Hagopian's superiors and employer.

68. The false and defamatory comments contained in Defendant Hagopian's electronic e-mail communications and statements to his superiors include but are not limited to the following statements accusing Mr. Askins of committing and attempting to commit criminal activities:

- Coerced a subordinate into lying to a United States Coast Guard inspector;
- Tried to deceive the United States Coast Guard;
- Threw a subordinate under the bus for not lying to the United States Coast Guard;
- Has no class;
- Performed his duties as a Captain by encouraging and condoning deception to a regulatory body;
- Is not a leader, lied, and put his subordinates in a position where they felt compelled to lie or risk losing their job;
- Ordered a false entry into vessel logbook; and
- tried to mislead a government official

69. The defamatory language was clear and reasonably capable of only one meaning.

70. On information and belief, the defamatory statements were made with knowledge of their falsity and/or at least reckless disregard for their falsity.

Original Complaint 11

71. The defamatory language was for the sole purpose of injuring Mr. Askins' personal and business reputation, to expose him to professional hatred, contempt or ridicule, impeach his honesty, integrity, virtue or reputation and to cause him harm.

72. As a result, either directly or indirectly, of the defamatory statements by Defendant Hagopian, Mr. Askins was terminated from his employment, has been unable to obtain new employment and has be forced to prove his innocence as a third party witness as part of a lawsuit between Defendant Hagopian and Defendant Noble. Mr. Askins has been emotionally devastated from losing his job with Defendant Noble, and suffered anxiety, worry, sleeplessness and other physical manifestations of emotional distress arising from Defendant Hagopian's defamatory statements.

73. Further, Mr. Askins is a member of a small business community, unlimited tonnage Captains, and, as such, these statements have caused him great unnecessary emotional pain and mental suffering.

74. Defendant Hagopian's statements were not privileged in any way.

75. Further, the false statements regarding Mr. Askins' profession, work conduct, as well as but not limited to his business character are considered *libel per se* under Texas law. The statements were published on at least Noble's e-mail server as well as third party e-mail exchange servers for the recipients of the e-mail, and therefore accessed by at least the e-mail recipients and on information and belief third party recipients of the e-mail.

76. The false statements were republished through the filing of judicial complaints, wherein the statements about Mr. Askins were not reasonably related to any judicial proceeding at issue and were made solely to injure Mr. Askins' personal and business reputation, to expose him to professional hatred, contempt or ridicule, impeach his honesty, integrity, virtue or reputation and

to cause him harm, such that the published statements do not fall under the litigation privilege. These complaints include: in the United States District Court for the Southern District of Texas, styled as *Jeffery B. Hagopian v. Noble Drilling Services, Inc.*, Case No. 4:15-cv-01040 and in the United States District Court for the Southern District of Texas, Galveston Division, styled as *Jeffery B. Hagopian v. Noble Drilling (US) LLC*, Case No. 3:16-cv-00099. Both of these complaints were filed as part of the Electronic Court Filing ("ECF") system, and therefore accessible to anyone in the world, including without limitation would be employers, business colleagues, lending institutions, friends and family.

77.     As a direct and proximate result of Defendant Hagopian's defamatory statements, Mr. Askins has been damaged and such damages were proximately caused by Defendant Hagopian's libel.

78.     Further, Defendant Hagopian's malicious and intentional acts against Mr. Askins impose liability for punitive damages as they were performed with malice and with knowledge of the actual truth.

## V.     SECOND CAUSE OF ACTION AGAINST DEFENDANT HAGOPIAN: TORTIOUS INTERFERNECE WITH A CONTRACT

79.     Plaintiff incorporates the allegations in the preceding paragraphs as if fully set forth herein.

80.     Mr. Askins entered into an at-will employment contract with Defendant Noble on or around November 2011.

81.     Mr. Askins and Defendant Noble operated under the terms of an at-will employment contract from November 2011 to April 2015. In fulfilling Mr. Askins end of the at-will employment contract, Mr. Askins was a USCG unlimited tonnage captain on the Noble Danny Adkins ("NDA")" semi-submersible drilling rig in the Gulf of Texas.

82. Defendant Hagopian had knowledge of the at-will employment contract entered into by and between Noble and Mr. Askins and had knowledge that Mr. Askins was performing under the at-will employment contract.

83. Defendant Hagopian was an at-will employee for Defendant Noble working on the same oilrig as Mr. Askins, and Defendant Hagopian was working in the same capacity as Captain of the NDA.

84. Defendant Hagopian willfully and intentionally committed acts calculated to cause damage to Mr. Askins in his business and employment with Noble.  Specifically, Defendant Hagopian, in his individual capacity and outside of his role as an agent for Defendant Noble, took steps to disrupt and terminate Mr. Askins' job as Captain of the NDA.

85. Defendant Hagopian took such steps as subjecting Mr. Askins to administrative review for certain medical leave procedures, making numerous false and maliciously defamatory statements to Mr. Askins superiors and other corporate agents for Defendant Noble about Mr. Askins' alleged commission of crimes and acts that would subject Defendant Noble to monetary fines and legal liability, sending false and maliciously defamatory e-mails concerning Mr. Akins' attempt to coerce his subordinate to commit procedural violations during an annual inspection by the United States Coast Guard and to lie to the United States Coast Guard during the inspection, and subsequently harassing Mr. Askins via text message after his termination.

86. Defendant Hagopian took these steps and others after Defendant Hagopian became aware that Defendant Hagopian would be terminated by Defendant Noble, and thus Defendant Hagopian perpetrated these interfering acts in his individual capacity and not in furtherance of any objective of Noble.

87. Defendant Hagopian's intentional interference with Mr. Askins' at-will employment contract with Defendant Noble caused Mr. Askins to incur damages, including, without limitation, losing his job, salary and stature at Defendant Noble, and consequential costs of trying to obtain new employment.

88. Defendant Hagopian acted with malicious intent when he sought to get Mr. Askins terminated.

## VI. THIRD CAUSE OF ACTION: WRONGFUL DISCHARGE IN VIOLATION OF PUBLIC POLICY

89. Plaintiff incorporates the allegations in the preceding paragraphs as if fully set forth herein.

90. Mr. Askins entered into an at-will employment contract with Defendant Noble on or around November 2011. Mr. Askins and Defendant Noble operated under the terms of an at-will employment contract from November 2011 to April 2015.

91. Mr. Askins brought to Defendant Noble's attention acts and omissions by Defendant Hagopian that were putting the crewmembers of the NDA at significant risk of injury or loss of life. These acts and omissions include, but are not limited to, Defendant Hagopian's favoritism towards Third Mate Rocco Mussumeci, Defendant Hagopian's illegal gambling aboard the NDA, Defendant Hagopian's negligent supervision and inspections of the NDA which lead to Mr. Askins discovery of expired batteries in flashlights and life jackets, expired food packets in lifeboats, and insulation deficiencies in the storage and lube oil rooms of the NDA. Mr. Askins reasonably believed that Defendant Hagopian's illegal acts and omissions would have put the crew of the NDA in serious danger.

92. Upon information and belief, Defendant Hagopian's complained of acts and omissions were in violation of Federal statutes and maritime laws.

93. Mr. Askins brought the illegal acts and omissions to Defendant Noble's attention at least three separate times between January 2015 and Mr. Askins termination in April 2015. Upon information and belief, at least the first time Mr. Askins voiced these concerns, he was given a clear directive by Defendant Noble to ignore the illegal acts of Defendant Hagopian and resolve the matter privately.

94. Defendant wrongfully discharged Mr. Askins from employment as a direct result of Mr. Askins voicing concerns about Defendant Hagopian's illegal conduct that was putting the safety and wellbeing of the crewmembers aboard the NDA at risk. By terminating Mr. Askins for voicing these concerns, Defendant Noble is forcing Mr. Askins and fellow employees to make a choice between protecting the life and safety of crewmembers or risk termination.

## VII.  DEMAND FOR JURY TRIAL

95. Plaintiff hereby demands a trial by jury of any and all issues triable with right by a jury pursuant to Rule 38 of the Federal Rules of Civil Procedure.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays as follows:

a) Actual damages, general and special, as to each Defendant;

b) Exemplary damages under Texas Civil Practice & Remedies Code section 41.003(a);

c) A permanent injunction requiring Defendant Hagopian to retract his defamatory statements;

d) Prejudgment interest;

e) Post-judgment interest;

f) Attorney fees;

g) Costs; and

h) All other relief to which Plaintiff is entitled.

DATED: Austin, Texas, May 13, 2016.

**By:** /s/ *Mateo Z. Fowler*
Mateo Z. Fowler
State Bar No. 24062726
mateofowler@mzflaw.com
Lauren E. Sprouse
State Bar No. 24079380
laurensprouse@mzflaw.com

**MZF LAW, PLLC**
101 West 6th Street, Suite 610
Austin, TX 78701
Telephone: (281) 546-5172

**ATTORNEYS FOR PLAINTIFF
DANIEL ASKSINS**